UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| JAMES ELSTON, | ) |
| | ) |
| Plaintiff, | ) No. 2:18-CV-19 RLW |
| | ) |
| v. | ) |
| | ) |
| JOHNNIE POLLARD, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the court on Defendants Johnnie Pollard and Joshua Zuccarini's Motion for Summary Judgment (ECF No. 51). This matter is fully briefed and ready for disposition.

## BACKGROUND

Plaintiff James Elston ("Elston") is an offender in the Missouri Department of Corrections ("MDOC") and is incarcerated currently and at all relevant times at the Moberly Correctional Center ("MCC"). (Defendants' Statement of Uncontroverted Material Facts in Support of Summary Judgment ("DSUMF"), ECF No. 53, ¶¶1, 2). Defendant Johnnie Pollard ("Pollard") is employed by MDOC as a correctional officer II ("CO II") and assigned to MCC. (DSUMF, ¶3). Defendant Joshua Zuccarini ("Zuccarini") is employed by MDOC and is assigned to MCC. (DSUMF, ¶4).

Because of damage to his esophagus, Elston has a medical lay-in, permitting him thirty minutes to eat. (DSUMF, ¶5). On October 16, 2017, Elston was eating in the dining hall. (DSUMF, ¶6). Pollard was on duty in the dining hall. (DSUMF, ¶7). The Captain instructed Pollard to check the identification of the remaining offenders in the dining hall. (DSUMF, ¶8).

Elston instead produced his medical lay-in. (DSUMF, ¶9). Pollard gave four directives for Elston to produce his identification before Elston produced his identification. (DSUMF, ¶10). Another officer told Elston to leave the dining hall. (DSUMF, ¶11). Elston was asked to leave because he did not comply repeatedly with Pollard's order to produce his identification. (DSUMF, ¶12). Elston did not suffer any medical injuries because of the incident on October 16, 2017. (DSUMF, ¶13). Elston violated Rule 20.1 of the Offender Handbook ("Failing to comply with a written or verbal of instruction of any employee."). Under MDOC policy IS19-1.1, Pollard could have issued a conduct violation to Elston for violation of Rule 20.1, but Elston was permitted to return to his housing unit. (DSUMF, ¶15).

On October 17, 2017, Elston filed an Informal Resolution Request ("IRR"), complaining that he tried to show Pollard his medical lay-in on the prior day, but that Pollard would not look at it and that another officer made him leave, despite Elston's medical lay-in that provided him extra time for eating. (DSUMF, ¶17). On or around November 14, 2017, Elston's IRR was denied because the investigator found Elston had not been harassed by staff. (DSUMF, ¶19).

On or around November 27, 2017, Elston filed a grievance about the October 16, 2017 incident. (DSUMF, ¶20). Elston argued that there had not been an investigation and that video footage would have proven him correct. (DSUMF, ¶21). Elston's grievance was denied. (DSUMF, ¶22).

On or around January 12, 2018, Elston filed a grievance appeal, which was denied on or around February 22, 2018. (DSUMF, ¶¶23-24). In this action, Elston brings claims under the 42 U.S.C. §1983 for violation of the Eighth and Fourteenth Amendments, Title II of the Americans with

Disabilities Act ("ADA"), and the Rehabilitation Act ("RA"). (ECF No. 1).[1] Elston's allegations against Defendants in his complaint are:

> On 10/16/2017, 1/28/2018, 2/13/2018 CO II Pollard, CO I Zukerina (sic) and Unknown Captain, custody personaell (sic) who run the operation in the dining facility denied Plaintiff the right to eat even after he showed this is layin for reasonable accommodation and made him throw away his food. Plaintiff informed the CO's that he had grieved the issue to Dean Minor the Warden at MCC who stated his layin would be honored in MCC-07-1033, now grieved to appeal deputy director in Jefferson City. The CO's did not care what the warden had said and refused to honor the layin.

(ECF No. 1, p. 8). Elston, however, had not filed a grievance about the alleged incidence on January 28, 2018 and February 13, 2018. (DSUMF, ¶26). Elston did not allege Zuccarini was present during the dining hall confrontation on October 16, 2017. (DSUMF, ¶29).

## DISCUSSION

### I. MOTION FOR SUMMARY JUDGMENT

#### A. Standard of Review

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

---

[1] Elston also filed a claim under the Missouri Human Rights Act, but the Court previously dismissed that claim. (ECF No. 9 at 7).

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

### B. Exhaustion of the Grievance Procedure for the Incidents on January 28, 2018 and February 13, 2018

An inmate must exhaust all available administrative remedies before bringing a § 1983 suit. 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir.2014). "Nonexhaustion is an affirmative defense, and defendants have the burden of raising and proving the absence of exhaustion." *Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015) (citing *Jones*, 549 U.S. at 211–12, 127 S.Ct. 910).

As previously mentioned, Elston alleges in his Complaint that he was denied his right to eat on October 16, 2017, January 28, 2018 and February 13, 2018. Elston has not exhausted the grievance process about the alleged incidence that occurred on January 28, 2018 and February 13, 2018.

Elston admitted that he did not file a grievance regarding any incidents that occurred on January 28, 2018 or February 13, 2018. (SUMF, ¶27). Elston further clarified that his claim against Zuccarini is based solely upon the February 13, 2018 incident. Therefore, the Court holds that Elston's claims based upon the January 28, 2018 and February 13, 2018 incidents are dismissed for failure to exhaust his administrative remedies. Notably, this also dismisses all claims against Zuccarini. *See Porter v. Sturm*, 781 F.3d 448, 452 (8th Cir. 2015) (holding "[d]ismissal without prejudice is mandatory" where the plaintiff did not exhaust his institution's grievance procedures).

### C. Deliberate Indifference to Plaintiff's Medical Needs

To prevail on an Eighth Amendment claim for deprivation of medical care, an inmate must show that the prison official was deliberately indifferent to the inmate's serious medical needs. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir.1997). This requires a two-part showing that (1) the inmate suffered from an objectively serious medical need, and (2) the prison official knew of the need yet deliberately disregarded it. *Id.; see also Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011). "Proof of deliberate indifference requires a showing of a mental state 'akin to criminal recklessness.'" *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019) (quoting *A.H. v. St. Louis Cty., Missouri*, 891 F.3d 721, 726 (8th Cir. 2018)).

Elston has a medical lay-in, demonstrating he suffers from a serious medical need. The medical lay-in affords him extra time to eat. (DSUMF, ¶5). Defendants have produced evidence that Defendant Pollard ordered Elston to produce his identification, but Elston refused four times before producing his identification. (DSUMF, ¶¶8-10). A different officer, not Defendant Pollard,

ordered Elston to leave the dining hall because of his refusal to produce his identification. (DSUMF, ¶11; ECF No. 53-4 at 37). Therefore, the Court finds no evidence in the record that Pollard did not allow Elston time to finish eating.

Elston has not shown Pollard exhibited criminal recklessness, or that Pollard "'actually knew that the inmate faced a substantial risk of serious harm' and did not respond reasonably to that risk." *A.H. v. St. Louis Cty., Missouri*, 891 F.3d 721, 726 (8th Cir. 2018) (quoting *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)); *see Farmer v. Brennan*, 511 U.S. 825, 836–37, 844–45, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Rather, Elston's refusal to comply with the directive to produce his identification was the reason for his removal from the dining hall. (ECF No. 53-4 at 37). Given that Pollard did not order Elston out of the dining hall and did not preclude Elston from finishing his meal, Elston has presented no evidence that supports his allegations that Defendants were indifferent to his serious medical needs. The Court grants Defendants' Motion for Summary Judgment on this claim.

### D. ADA and RA claims

"To state a prima facie claim under the ADA, a plaintiff must show: 1) he is a person with a disability as defined by statute; 2) he is otherwise qualified for the benefit in question; and 3) he was excluded from the benefit due to discrimination based upon disability." *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999) (citing 42 U.S.C. § 12131 *et seq.*); *see also Gorman*, 152 F.3d at 911–12; *Doe v. University of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir.1995). "The RA contains the additional requirement that the plaintiff show the program or activity from which he is excluded receives federal financial assistance." *Randolph*, 170 F.3d at 858 (citing *Gorman*, 152 F.3d at 911); *Thomlison v. City of Omaha*, 63 F.3d 786, 788 (8th Cir.1995).

Elston has not presented evidence to support his ADA and RA claims. The undisputed evidence shows that Elston is a disabled person within the meaning of the statutes and that he is otherwise qualified for the benefits at issue. Elston had a medical lay-in that allowed him to have additional time for meals. The record shows that Elston was not prevented from using his medical lay-in by Defendants and had meaningful access to his extended mealtime. Notably, Pollard was not the officer who told Elston to leave the dining hall. Pollard only asked Elston to produce his identification several times. Furthermore, Elston has alleged no facts against Zuccarini to support his ADA and RA claims. Therefore, the Court grants Defendants' Motion for Summary Judgment on the ADA and RA claims.

### E. Qualified Immunity

"Qualified immunity shields government officials from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would know." *Ferguson v. Short*, 840 F.3d 508, 510 (8th Cir. 2016); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ("Qualified immunity generally shields '[g]overnment officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"). "To resolve a government official's claim of qualified immunity, we apply a two-part test, asking whether the plaintiff has demonstrated a violation of a constitutional right and whether that constitutional right was clearly established at the time of the violation." *Williams v. Jackson*, 600 F.3d 1007, 1012 (8th Cir. 2010).

Here, Elston has failed to allege a constitutional violation by Pollard or Zuccarini. Pollard simply requested Elston's identification. As stated, Pollard did not remove Elston from the dining hall and did not preclude him from eating for 30 minutes, as afforded in his lay-in. Rather, another

officer ordered Elston to leave the dining hall because of his refusal to comply with the order to produce his identification. (ECF No. 53-4 at 37). Additionally, Elston has alleged no facts against Zuccarini related to the October 16, 2017 incident. The Court holds that Elston has not alleged a constitutional violation by Pollard or Zuccarini and, therefore, they are entitled to qualified immunity against Elston's allegations.

## II. Discovery Motions

Elston filed various discovery motions. All of them are without merit for various reasons:

- Plaintiff's Amended Pleading for Discovery (ECF No. 34). Elston seeks the video footage from the MCC for October 16, 2017 between 7:00-9:00 a.m. Defendants responded that, pursuant to institution policy, the video footage was not retained because this incident did not involve an allegation of force. (ECF No. 57 at 3). In addition, Elston did not request video footage be examined in his Offender Grievance. Therefore, the Court denies Elston's Amended Pleading for Discovery as moot.

- Plaintiff's Motions to Introduce Evidence (ECF Nos. 36, 37, and 41). Document 36 includes unauthenticated pages from Elston's medical records, dated September 8, 2017 to September 19, 2017. Elston apparently provided these documents to prove that he has a medical lay-in, which is an undisputed fact. The Court denies this motion without prejudice. Document 37 consists of unauthenticated pages of the Chronological Log from the second shift in the Housing Until 3 Rotunda. On the first page, it shows C Wing breakfast began at 7:58 and on the third page it states "8:12 Dining Room Closed." (ECF No. 37-1). The Court cannot consider the unauthenticated document in support of Defendants' Motion for Summary

Judgment. *See Watkins v. Perkins*, 618 F. App'x 299, (Mem)–300 (8th Cir. 2015) (reversing the district court's grant of summary judgment in a § 1983 action, where the court considered the "officers' unauthenticated and unsigned memoranda, as well as the other unauthenticated documents they offered, although those materials would not be admissible in evidence"). Given that these pages are unauthenticated, the Court will deny the Motion to Introduce Evidence. Document 41 provides Elston's vitals from November 10, 2014 to August 6, 2018. Elston has not demonstrated how his weight over these lengthy period supports his claim related to October 16, 2017. Therefore, the Court also denies this Motion to Introduce Evidence.

- Plaintiff's Motion Requesting Court Ordered Polygraph (ECF No. 40). The Court denies this Motion because (1) Elston filed this Motion one month after the close of discovery and (2) because a polygraph is considered unreliable and inadmissible. *Boling v. Boling*, 887 S.W.2d 437, 440 (Mo.App.1994); *Hensley v. Shelter Mut. Ins. Co.*, 210 S.W.3d 455, 469 (Mo. Ct. App. 2007). Therefore, the Court denies Elston's Motion Requesting Court Ordered Polygraph.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Johnnie Pollard and Joshua Zuccarini's Motion for Summary Judgment (ECF No. 51) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Amended Pleading for Discovery (ECF No. 34) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motions to Introduce Evidence (ECF Nos. 36, 37, and 41) are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion Requesting Court Ordered Polygraph (ECF No. 40) is **DENIED**.

An appropriate Judgment is filed herewith.

Dated this 15th day of November, 2019.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**